In the

# United States Court of Appeals

## For the Seventh Circuit

———————

No. 07-3456

FRANCISCAN SKEMP HEALTHCARE, INCORPORATED,

*Plaintiff-Appellant*,

*v.*

CENTRAL STATES JOINT BOARD HEALTH AND
WELFARE TRUST FUND,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 07 C 387—**John C. Shabaz**, *Judge.*

———————

ARGUED MAY 9, 2008—DECIDED JULY 31, 2008

———————

Before FLAUM, KANNE, and TINDER, *Circuit Judges.*

TINDER, *Circuit Judge.* This is a case about ERISA pre-emption. The plaintiff-appellant, Franciscan Skemp Healthcare, Inc. ("Franciscan Skemp"), is a healthcare provider in La Crosse, Wisconsin. The defendant-appellee, Central States Joint Board Health and Welfare Trust Fund ("Central States"), is an employee benefit plan. Sherry Romine, through her employment, was a Central States plan participant. She came to Franciscan Skemp in October 2003 seeking medical treatment. Before providing

services, Franciscan Skemp called Central States to verify Central States's coverage of Romine and the relevant services. A Central States representative made oral representations that they were covered. Franciscan Skemp treated Romine. Following unsuccessful efforts to receive payment from Central States, after submitting a claim for benefits, Franciscan Skemp learned that Central States would not pay—it turns out that Romine lost her benefits, effective September 30, 2003, for failing to pay COBRA premiums. When Franciscan Skemp called in October to verify coverage, the Central States representative failed to disclose that Romine's coverage was subject to COBRA and that the coverage could be retroactively canceled.

Franciscan Skemp brought suit against Central States in Wisconsin state court in May 2007, alleging claims of negligent misrepresentation and estoppel under the laws of that state. Central States filed a notice purporting to remove the case to federal court on the grounds that the claims were subject to the Employee Retirement Income Security Act ("ERISA"), conferring exclusive federal jurisdiction, and then moved to dismiss in district court for failure to state a claim under ERISA. Franciscan Skemp opposed the motion to dismiss and brought its own motion to remand to state court. The district court concluded that the state-law claims were completely preempted by ERISA, thus establishing exclusive federal jurisdiction. After recharacterizing the claims as ones arising under ERISA, the district court also dismissed them for failure to state a claim. We are now presented with Franciscan Skemp's appeal. We review the legal question of whether there was federal jurisdiction, and proper removal, de novo. *Alexander v. Mount Sinai Hosp. Med. Ctr.*, 484 F.3d 889, 891 (7th Cir. 2007).

Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim. ERISA is such an area: "[T]he ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Complete preemption, therefore, creates an exception to the ordinary application of the well-pleaded-complaint rule—that a court only looks to the complaint to determine whether there is federal-question jurisdiction. Artful pleading on the part of a plaintiff to disguise federal claims by cleverly dressing them in the clothing of state-law theories will not succeed in keeping the case in state court. In these instances, the federal law has effectively displaced any potential state-law claims. "'When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law.'" *Davila*, 542 U.S. at 207-08 (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Accordingly, such claims are removable.

Of course the difficulty arises in drawing the line between what is completely preempted and what escapes the cast of the federal net. The Supreme Court in *Davila* used a two-part analysis for determining when a claim has been completely preempted by ERISA:

> [I]f an individual brings suit complaining of a denial of coverage for medical care, where the individual is

entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B) . . . . In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Davila*, 542 U.S. at 210.[1]

Under the district court's and Central States's reasoning, Franciscan Skemp could have brought its state-law claims of negligent misrepresentation and estoppel under ERISA § 502(a)(1)(B).[2] Franciscan Skemp took an assignment of benefits from Romine and filed a claim form with Central States. The filing of the form and the language on the form demonstrate an assignment of benefits. Once Romine's assignee, Franciscan Skemp stands in her shoes and is an ERISA beneficiary. As a beneficiary,

---

[1] The district court used the test from *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482 (7th Cir. 1996). While the *Jass* decision itself has not been called into question, we find that the test outlined by the Supreme Court in *Davila* displaced the similar three-prong *Jass* analysis previously used in this circuit. Therefore, we are using the two-pronged analysis from *Davila* rather than the three-part *Jass* test. Regardless, the result would be the same.

[2] We use the citation form "ERISA § 502(a)(1)(B)" because that is the more common practice. The official U.S.C. cite is 29 U.S.C. § 1132(a)(1)(B).

Franciscan Skemp was entitled to bring a claim under ERISA. Franciscan Skemp requested that Central States be "estopped from denying coverage benefits for the Romine medical services" and that a "judgment [be entered] against defendant for the services provided by Franciscan Skemp as would otherwise be covered by defendant's plan." The district court found that "[t]hese requests establish that the gravamen of plaintiff's cause of action is a desire to recover benefits it believes are due to it under the terms of the Plan." Section 502(a)(1)(B) of ERISA provides that a beneficiary can bring an action to "recover benefits due to him under the terms of his plan." Therefore, the argument goes, Franciscan Skemp's claims are within ERISA § 502's scope.

What the district court and Central States too easily overlook, however, is that Franciscan Skemp is not bringing these claims as Romine's assignee. Admittedly at first glance it looks like a claim that would arise under ERISA—a beneficiary's assignee bringing an action to recover plan benefits. But upon closer examination, that is not at all what is happening here.

Franciscan Skemp is bringing these claims of negligent misrepresentation and estoppel, not as Romine's assignee, but entirely in its own right. These claims arise not from the plan or its terms, but from the alleged oral representations made by Central States to Franciscan Skemp. Franciscan Skemp *could* bring ERISA claims in Romine's shoes as a beneficiary for the denial of benefits under the plan; but it has not. In fact, Franciscan Skemp does not at all dispute Central States's decision to deny Romine coverage. Franciscan Skemp acknowledges that Romine is not entitled to benefits, because she failed to make her COBRA premium payments. It would be odd indeed, then, to

conclude that Franciscan Skemp is standing in Romine's shoes as a beneficiary seeking benefits when Franciscan Skemp acknowledges that Romine is not actually entitled to any benefits. Franciscan Skemp is basing its claims on a conversation to which Romine was not even a party. Thus Franciscan Skemp is not and could not be "standing in her shoes" or asserting her rights. Franciscan Skemp is bringing its own independent claims, and these claims are simply not claims to "enforce the rights under the terms of the plan." ERISA § 502(a)(1)(B).

What of the claim form then? We do not quarrel with the determination below that the claim form evidences an assignment of benefits; we just disagree with the import of that determination. The claim form was filed before Franciscan Skemp was aware that Romine hadn't made her payments and that Central States would deny coverage. At that point in time, it was perfectly logical for Franciscan Skemp to file the form as Romine's assignee. Upon learning that Central States would not pay due to Romine's failure to pay COBRA premiums, Franciscan Skemp then asserted its own rights by bringing this lawsuit. Simply because at one point in time Franciscan Skemp acknowledged an assignment from Romine does not mean that it simultaneously and implicitly gave up any claim(s) it had against Central States apart from that assignment.

Central States also makes much of the references in the complaint to the plan and the request that Central States pay "to the extent said services would otherwise have been covered." These references, however, are solely for the purpose of identifying a damages amount; they do not convert the claims into ones for plan benefits. Franciscan Skemp seeks damages, not wrongfully denied benefits.

Therefore, under the first consideration from *Davila*, the claims are not preempted because they could not have been brought under ERISA § 502(a)(1)(B). This is not a beneficiary's claim—a beneficiary whom all agree is not even entitled to benefits. Moreover, Franciscan Skemp is not suing "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," which is precisely all § 502(a)(1)(B) provides. Franciscan Skemp is seeking damages arising from alleged misrepresentations made by Central States to Fransiscan Skemp in response to its inquiry—a wrong not within § 502's scope.

Analysis under the second step in the *Davila* test—whether there is an independent legal duty implicated by the defendant's actions—also undercuts finding the claims completely preempted. The claims of negligent misrepresentation and estoppel derive from duties imposed apart from ERISA and/or the plan terms; Wisconsin state law defines those duties. For instance, Wisconsin's Civil Jury Instruction regarding Negligent Misrepresentation includes the following:

> Representations of fact do not have to be in writing or by word of mouth, but may be acts or conduct on the part of (<u>defendant</u>), or even by silence if there is a duty to speak. [A duty to speak may arise when information is asked for; or where the circumstances would call for a response in order that the parties may be on equal footing; or where there is a relationship of trust or confidence between the parties.]

Wis. Civil Jury Instructions 2403 (1993); *cf. Kaloti Enters., Inc. v. Kellog Sales Co.*, 283 Wis. 2d 555, ¶¶ 13-20, 699 N.W.2d 205, ¶¶ 13-20 (Wis. 2005) (describing the duty to

disclose in misrepresentation-based torts); *Tietsworth v. Harley-Davidson, Inc.*, 270 Wis. 2d 146, ¶¶ 13-14, 677 N.W.2d 233, ¶¶ 13-14 (Wis. 2004) (explaining that " 'silence, a failure to disclose a fact, is not an intentional misrepresentation unless the seller has a duty to disclose' " and "[t]he existence and scope of a duty to disclose are questions of law for the court" (quoting and citing *Ollerman v. O'Rourke Co.*, 94 Wis. 2d 17, 26, 288 N.W.2d 95 (Wis. 1980))). See also, e.g., *Milas v. Labor Ass'n of Wisconsin, Inc.*, 214 Wis. 2d 1, ¶ 16, 571 N.W.2d 656, ¶ 16 (Wis. 1997), for the elements of an estoppel claim. Whether Franciscan Skemp can prevail on these claims is an issue for another day and another court, but the relevant legal duties, logically implicated by these facts, are entirely independent from ERISA and any plan terms. Therefore, under both *Davila* prongs in the test for complete preemption, Franciscan Skemp's state-law claims survive.

Decisions from other circuits also support this outcome. The Eighth Circuit in *In Home Health, Inc. v. Prudential Insurance Co. of America*, 101 F.3d 600, 604-07 (8th Cir. 1997), found that ERISA did not preempt a state tort claim against an administrator of an ERISA plan brought by a healthcare provider "not as an assignee of an ERISA beneficiary but as an independent entity claiming damages." *Id.* at 604. The court also noted that "[a] majority [of other circuits] have concluded [that] providers' state law claims are not preempted by ERISA." *Id.*; *see also Meadows v. Employers Health Ins.*, 47 F.3d 1006 (9th Cir. 1995). In *Meadows*, a healthcare provider similarly received assurance of coverage and provided treatment, but received no payment. The provider brought a claim alleging negligent misrepresentation, estoppel, and breach of contract. The action was removed on the basis

of ERISA preemption, and the court dismissed without prejudice, explaining that because the healthcare provider sued derivatively, ERISA preempted the state-law claims. *Meadows*, 47 F.3d at 1008. The healthcare provider then filed a new suit, but this time suing not as an assignee or subrogee but as "a third-party health care provider for claims that were non-derivative and independent of those which the [patient] might have had." *Id.* It was a suit for damages, not for policy benefits. *Id.* On appeal, the Ninth Circuit concluded that the claims were not completely preempted, explaining, "[T]he claims arose because there was not plan coverage for the [patient], which was the very fact misrepresented . . . ." *Id.* at 1010. In *Hospice of Metro Denver v. Group Health Insurance of Oklahoma, Inc.*, 944 F.2d 752 (10th Cir. 1991), the court specifically pointed out that the references in the complaint to the ERISA plan did not automatically make the claims ERISA claims. It concluded, "those references provide a background factual explanation of Blue Cross's decision to deny benefits . . . . [The patient/beneficiary] is not a party to this action, and his right to receive benefits under the plan is not at issue." *Id.* at 754. These cases, and others, from our sister circuits bolster our conclusion in this case that Franciscan Skemp's state-law claims are not completely preempted by ERISA. *See also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243-50 (5th Cir. 1990).

These decisions were criticized by Central States in part because they were pre-*Davila*. We do not find any concrete reason to suppose that the conclusions reached in these cases have been deemed incorrect by *Davila*. Moreover, we cite these cases not for their analytical

frameworks, where we might find disagreement[3] and where we opt for the method outlined in *Davila*, but for the inherent logic of their outcomes, which supports the notion that state-law claims brought by third-party healthcare providers, in situations analogous to the one with which we are now faced, are independent of ERISA and not completely preempted.[4]

Central States does urge *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272 (6th Cir. 1991), as support for its position. However, as the Eighth Circuit noted, this case is somewhat of an exception to the trend. *See In Home Health*, 101 F.3d at 604-05. In *Cromwell* the Sixth Circuit found that a healthcare provider's state-law claims of negligent misrepresentation and estoppel were essentially claims for ERISA plan benefits and thus preempted. *Cromwell* is distinguishable at the outset because the court found that the appellants "clearly claimed to be

---

[3] Admittedly some of these cases apply, in whole or in part, what we consider conflict preemption analysis rather than complete preemption analysis. However, given the similar underlying policy considerations and that conflict preemption in a general sense (apart from its savings clause) is broader than complete preemption, a finding that these state-law claims survive even conflict preemption is informative to our discussion. *See Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1281-82 (11th Cir. 2005). However, we explicitly note that by making this observation we are not implying that the presence (or absence) of either conflict or complete preemption is a prerequisite (or a bar) for finding the other. *Cf. Davila*, 542 U.S. at 214 n.4, 216-18.

[4] At least one district court has reached the same result we reach here post-*Davila*. *See Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.*, 360 F. Supp. 2d. 202 (D. Mass. 2005).

entitled to benefits due them from the . . . plan as beneficiaries by virtue of the assignment of benefits clause." *Id.* at 1278; *see In Home Health*, 101 F.3d at 605 ("*Cromwell* is distinguishable from the present case because Home Health is not seeking benefits as the assignee of an ERISA beneficiary."). In the instant case as in *In Home Health* and unlike *Cromwell*, Franciscan Skemp is not seeking benefits as Romine's assignee or "by virtue of an assignment."

Moreover, even aside from that facial difference, the reasoning in *Cromwell* is simply not persuasive. As the dissenting judge in *Cromwell* opined, in accord with our analysis in this case, "[A] claim of promissory estoppel raised by a third-party health care provider is asserted precisely because that provider *is not* entitled to benefits under the plan." *Cromwell*, 944 F.2d at 1283 (Jones, J. dissenting). He also criticized the majority's focus on the alleged "assignment," *id.* at 1281-82, 1283-84, and concluded that "the Fifth Circuit's analysis in *Memorial Hospital* is correct, and [he] would follow it to find no preemption of Cromwell's promissory estoppel and negligent misrepresentation claims." *Id.* at 1284. The dissenting judge also quoted a rather persuasive passage from *Memorial Hospital*:

> If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms of the health care plan. If the patient is not covered under the plan, he or she is individually obligated to pay for the medical services received. The only question is whether the risk of nonpayment should remain

with the provider or be shifted to the insurance company, which through its agents misrepresented to the provider the patient's coverage under the plan. A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage.

*Mem'l Hosp.*, 904 F.2d at 246, *quoted in Cromwell*, 944 F.2d at 1284 (Jones, J. dissenting). The criticism of the *Cromwell* reasoning found in its dissent and in other circuits' cases plus our own application of the Supreme Court's *Davila* test in this case compels us to conclude that *Cromwell* is a poorly reasoned outlier in the face of the strong trend in the bulk of the cases considering healthcare-provider claims in contexts similar to the case currently before us.

In sum, proper analysis of Franciscan Skemp's claims against the broad reach of ERISA under the test outlined by the Supreme Court in *Davila* leads to the conclusion that ERISA does not completely preempt the claims at issue in this case. Fransiscan Skemp is not bringing these claims as a beneficiary, nor is it standing in the shoes of a beneficiary. It is not arguing about plan terms. It is not seeking to recover plan benefits and even acknowledges that under the plan Romine is entitled to nothing. Fransiscan Skemp is bringing state-law claims based on the alleged shortcomings in the communications between it and Central States. There are no grounds for removal. This case belongs in state court.

We, of course, make no comment on the ultimate success or failure of these state-law claims, nor do we pass judgment on any potential conflict, sometimes called defensive, preemption argument. *See* ERISA § 514(a), 29 U.S.C. § 1144(a). Conflict preemption, unlike complete

preemption, actually is a true preemption doctrine and is an issue left to the state court in this case, since conflict preemption does not provide an independent basis for federal jurisdiction/removal. *See Ervast v. Flexible Prods. Co.*, 346 F.3d 1007, 1012-15 (11th Cir. 2003) ("Whether complete preemption applies is a jurisdictional issue, which must be addressed first and is separate and distinct from whether a defendant's ERISA § 514 . . . preemption defenses apply . . . ."); *see also Jass*, 88 F.3d at 1487-88 ("[W]e noted that the state law claim may be susceptible to 'conflict preemption' under § 514(a), but merely as a defense and not a basis for federal jurisdiction."); *Cotton*, 402 F.3d at 1281 n.14 ("[A] federal court's order remanding a case to state court based on the inapplicability of the complete preemption doctrine leaves open the question whether the plaintiff's claims are nevertheless defensively preempted.").

We REVERSE the denial of the motion to remand and VACATE the order dismissing the claims as the trial court lacked jurisdiction to enter that order. Upon return of this case to the district court, it is to be remanded to the state court from which it was removed.