# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF RIVERVIEW,

      Plaintiff-Appellant,

v

OPERATING ENGINEERS LOCAL 324
PENSION PLAN,

      Defendant-Appellee,

and

JOHN STICKEL and INTERNATIONAL UNION
OF OPERATING ENGINEERS LOCAL 324,

      Intervening Defendants-Appellees.

UNPUBLISHED
May 30, 2017

No. 331234
Oakland Circuit Court
LC No. 2015-145525-CZ

Before: SERVITTO, P.J., and CAVANAGH and FORT HOOD, JJ.

PER CURIAM.

Plaintiff, the City of Riverview (the City), appeals as of right an opinion and order granting a motion for summary disposition filed by defendant, Operating Engineers Local 324 Pension Plan (the Fund), pursuant to MCR 2.116(C)(4) and (C)(8). On appeal, the City challenges the trial court's ruling that the City's claim is preempted by the Employee Retirement Income Security Act, 29 USC 1001 *et seq.* (ERISA), and argues that the trial court should have decided as a threshold issue whether the City had authority under the Michigan Constitution to bind itself to contribute to the Fund. We affirm.

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). The trial court granted summary disposition under MCR 2.116(C)(4) and (C)(8). Summary disposition is appropriate under MCR 2.116(C)(4) if "[t]he court lacks jurisdiction of the subject matter." "In considering a motion challenging jurisdiction under MCR 2.116(C)(4), a court must determine whether the affidavits, together with the pleadings, depositions, admissions, and documentary evidence, demonstrate that the court lacks subject matter jurisdiction." *CC Mid West, Inc v McDougall*, 470 Mich 878; 683 NW2d 142 (2004). Whether a trial court possesses

-1-

subject-matter jurisdiction presents a question of law that is reviewed de novo. *Midwest Energy Coop v Pub Serv Comm*, 268 Mich App 521, 523; 708 NW2d 147 (2005).

"A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone to determine if the opposing party has stated a claim for which relief can be granted." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotation marks and citation omitted). A reviewing court "must accept all well-pleaded allegations as true and construe them in the light most favorable to the nonmoving party. The motion should be granted only if no factual development could possibly justify recovery." *Id*. (citation omitted). "Issues of law, such as federal preemption of state law, are reviewed de novo." *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 138; 796 NW2d 94 (2010).

The City argues that the trial court erred in determining that the City's claims are preempted by ERISA because the City's claims are based on state law, i.e., provisions of the Michigan Constitution. We disagree.

The Supremacy Clause of the United States Constitution provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding. [US Const, art VI, cl 2.]

Therefore, this Court must follow federal statutes despite any contrary state law. *Packowski*, 289 Mich App at 139. "In other words, this Court is bound to find preemption when it exists because federal law is the supreme law of the land." *Id*.

> Whether a federal statute preempts a state-law claim is a question of federal law. When such questions of federal law are involved, we are bound to follow the prevailing opinions of the United States Supreme Court. If a state-law proceeding is preempted by federal law, the state court lacks subject-matter jurisdiction to hear the state-law cause of action. [*Id*. at 139-140 (citations omitted).]

See also *Brinker v Mich Bell Tel Co*, 152 Mich App 729, 733; 394 NW2d 88 (1986) (where the plaintiffs' state common-law claims were preempted by ERISA, the complaint failed to state a cause of action as a matter of law, warranting summary disposition under MCR 2.116(C)(8)).

As this Court explained in *Packowski*, 289 Mich App at 140 (citations omitted):

> There are three types of federal preemption: express preemption, conflict preemption, and field preemption. Express preemption occurs when a federal statute clearly states an intent to preempt state law or that intent is implied in a federal law's purpose and structure. Under conflict preemption, a federal law preempts state law to the extent that the state law directly conflicts with federal law or with the purposes and objectives of Congress. Field preemption acts to

preempt state law when federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it.

"ERISA was enacted to promote and protect the interests of employees and their beneficiaries in employee benefit plans." *Brinker*, 152 Mich App at 731. It is well settled that 29 USC 1144(a) expressly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA. This is an express preemption provision. See *Rush Prudential HMO, Inc v Moran*, 536 US 355, 364; 122 S Ct 2151; 153 L Ed 2d 375 (2002), overruled in part on other grounds by *Kentucky Ass'n of Health Plans, Inc v Miller*, 538 US 329; 123 S Ct 1471; 155 L Ed 2d 468 (2003); *Soehnlen v Fleet Owners Ins Fund*, 844 F3d 576, 589 (CA 6, 2016).[1] The deliberately expansive language of this provision was intended to make pension plan regulation exclusively a federal concern. *Thurman v Pfizer, Inc*, 484 F3d 855, 861 (CA 6, 2007). A state law may thus be preempted even if it was not specifically designed to affect employee benefit plans; even general state contract and tort laws may be preempted by ERISA. *Id*.

> The purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself. [*Penny/Ohlmann/Nieman, Inc v Miami Valley Pension Corp*, 399 F3d 692, 698 (CA 6, 2005) (quotation marks omitted).]

The City's claims are preempted by ERISA. The City bases its claims on provisions of the Michigan Constitution, but state constitutions, like other aspects of state law, must yield to federal law under the Supremacy Clause of the United States Constitution. See US Const, art VI, cl 2 (providing for the supremacy of federal law over the constitution and laws of any state). The fact that the state constitutional provisions upon which the City bases its claims were not specifically designed to regulate employee benefit plans has no bearing on the analysis. State laws of general application, such as, for example, common-law tort or contract claims, are subject to preemption under ERISA. See *Metro Life Ins Co v Taylor*, 481 US 58, 62; 107 S Ct 1542; 95 L Ed 2d 55 (1987); *Thurman*, 484 F3d at 861; *Brinker*, 152 Mich App at 732. The label placed on a state law claim is not dispositive; "virtually all state law claims relating to an employee benefit plan are preempted by ERISA." *Cromwell v Equicor-Equitable HCA Corp*, 944 F2d 1272, 1276 (CA 6, 1991).

The City's claims relate to employee benefit plans. The City requests declaratory relief concerning the Fund, including declarations that the City is not a lawful party to the Fund, that the City's participation in the Fund was "void ab initio[,]" that the City was not bound to

---

[1] The opinions of lower federal courts are not binding on this Court, but the analysis in such opinions may be considered persuasive. *Abela v Gen Motors Corp*, 469 Mich 603, 606-607; 677 NW2d 325 (2004).

contribute to the Fund, and that the City is not liable for statutory withdrawal liability. The City also sought a permanent injunction barring the Fund from attempting to assess or collect withdrawal liability. Therefore, the City effectively seeks an alternative enforcement mechanism concerning the return of contributions that it made to the Fund. This is a matter regulated by ERISA. See 29 USC 1103(c); *Laborers Pension Trust Fund-Detroit & Vicinity v Interior Exterior Specialists Constr Group, Inc*, 394 Fed Appx 285, 294 (CA 6, 2010). The City's request for declaratory relief concerning statutory withdrawal liability likewise falls within an area regulated by ERISA. See 29 USC 1451; 29 USC 1399; 29 USC 1401. The City's claim also effectively seeks to regulate the pension plan by binding plan administrators to particular choices, in particular, by requiring the Fund to return the City's contributions and to require the Fund to refrain from seeking to assess or collect withdrawal liability. Because the City's claims would provide an alternative enforcement mechanism and bind plan administrators to particular choices, ERISA preemption is applicable. See *Penny/Ohlmann/Nieman, Inc*, 399 F3d at 698.

The City suggests that the trial court should have resolved what the City calls the "threshold" issue of whether the Michigan Constitution barred the City from binding itself to contribute to the Fund. The City, however, cites no authority establishing that the existence of such a "threshold" issue exempts from ERISA preemption a state-law claim that is related to employee benefit plans. In determining whether the City's claims are preempted, it is proper to consider the remedies sought by the City in its first amended complaint. See *Marks v Newcourt Credit Group, Inc*, 342 F3d 444, 453 (CA 6, 2003) ("In deciding whether state-law claims are preempted by ERISA, we have focused on the remedy sought by plaintiffs."). As discussed above, the remedies sought by the City reflect that its claims relate to employee benefit plans.[2] And, although the City now questions its authority to do so, the fact is that the City has been contributing to the Fund for more than 15 years. Therefore, for the City to suggest that ERISA preemption is inapplicable because the City lacked authority to bind itself to contribute ignores the reality that the City has already voluntarily subjected itself to ERISA regulation by participating in the Fund. Cf. *Livolsi v City of New Castle, Pa*, 501 F Supp 1146, 1150 (WD Pa, 1980) (although ERISA does not regulate government plans, a state or local governmental body that chooses a private benefit plan for its employees subjects itself to federal jurisdiction under ERISA and "cannot later complain that ERISA regulation of that plan invades its sovereignty.").

In addition to the general preemption provision of 29 USC 1144(a), amendments of ERISA by the Multiemployer Pension Plan Amendment Act, see 29 USC 1381 *et seq.* (MPPAA), address federal courts' exclusive jurisdiction over most actions related to multiemployer plans and an employer's statutory withdrawal liability. "[T]he MPPAA provides

---

[2] Indeed, the City itself has made clear that the remedies it seeks relate to employee benefit plans – in its motion for peremptory reversal filed earlier in this appeal, the City stated that if it is judicially determined that the City lacked authority to participate in the Fund, then the City's "purported agreement to be a party to the Fund was *ultra vires* and, consequently, *void ab initio*." As the City's first amended complaint makes clear, the City seeks such a declaration so that it can be relieved of making further contributions or being assessed withdrawal liability and because it seeks the return of some contributions it has already made.

that if an employer withdraws from a multiemployer fund, it must make a payment of withdrawal liability, which is calculated as the employer's proportionate share of the fund's unfunded vested benefits." *DiGeronimo Aggregates, LLC v Zemla*, 763 F3d 506, 510 (CA 6, 2014) (quotation marks omitted). A provision of the MPPAA, 29 USC 1451, provides, in relevant part:

> (a) Persons entitled to maintain actions
>
> (1) A plan fiduciary, employer, plan participant, or beneficiary, who is adversely affected by the act or omission of any party under this subtitle with respect to a multiemployer plan, or an employee organization which represents such a plan participant or beneficiary for purposes of collective bargaining, may bring an action for appropriate legal or equitable relief, or both.
>
> (2) Notwithstanding paragraph (1), this section does not authorize an action against the Secretary of the Treasury, the Secretary of Labor, or the corporation.
>
> (b) Failure of employer to make withdrawal liability payment within prescribed time
>
> In any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of section 1145 of this title).
>
> (c) Jurisdiction of Federal and State courts
>
> *The district courts of the United States shall have exclusive jurisdiction of an action under this section without regard to the amount in controversy, except that State courts of competent jurisdiction shall have concurrent jurisdiction over an action brought by a plan fiduciary to collect withdrawal liability.* [Emphasis added.]

"[C]laims relating to withdrawal liability are limited to the specific remedies ERISA provides and cannot be satisfied by invoking state law remedies not provided by ERISA." *Central States, Southeast & Southwest Areas Pension Fund v Marquette Bank, Minneapolis, NA*, 836 F Supp 673, 677 (D Minn, 1993). See also *DiGeronimo Aggregates, LLC*, 763 F3d at 512 (holding that, because Congress did not create a negligence cause of action in favor of contributing employers against trustees, "and because ERISA and the MPPAA create a comprehensive legislative scheme governing contributing employers and multiemployer plans – including an integrated system of procedures for enforcement regarding withdrawal liability – a strong presumption exists that Congress deliberately omitted the availability of such a remedy.").

We conclude that 29 USC 1451(c) bars the City's state court action. The City is precluded from filing this action in state court concerning the Fund, which is a multiemployer

plan, in an effort to avoid withdrawal liability.[3]  ERISA and the MPPAA provide a comprehensive and exclusive enforcement mechanism for claims concerning withdrawal liability for multiemployer plans.  The City is required to use the federal statutory remedy.  See *DiGeronimo Aggregates, LLC*, 763 F3d at 512; *Central States*, 836 F Supp at 677.  There is only one statutory exception to the grant of exclusive jurisdiction to federal district courts: state courts have concurrent jurisdiction for an action filed by a plan fiduciary to collect withdrawal liability. 29 USC 1451(c).  The City is not a plan administrator, and it is not seeking to collect withdrawal liability; rather, the City brought this action in an effort to *avoid* withdrawal liability.  Therefore, the proper forum for the City's claim concerning withdrawal liability is the federal district court.

Next, we note that the fact that a federal district court remanded the case to the state court does not preclude the application of ERISA preemption in state court.  The federal district court concluded that the so-called "complete preemption" doctrine to support removal to federal court did not apply.  "Complete preemption, really a jurisdictional rather than a preemption doctrine, confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare, Inc v Central States Joint Bd Health & Welfare Trust Fund*, 538 F3d 594, 596 (CA 7, 2008).  "Complete preemption . . . creates an exception to the ordinary application of the well-pleaded-complaint rule – that a court only looks to the complaint to determine whether there is federal-question jurisdiction." *Id*.  But a federal court's determination that the complete preemption doctrine is inapplicable does not foreclose the possibility that preemption may apply as a defense in state court.  See *id*. at 601.  So-called "defensive" preemption may be asserted in state court on remand even if a federal court has determined that the complete preemption doctrine is inapplicable.  See *id*. ("A federal court's order remanding a case to state court based on the inapplicability of the complete preemption doctrine leaves open the question whether the plaintiff's claims are nevertheless defensively preempted.") (quotation marks, brackets, and citation omitted); *Cotton v Massachusetts Mut Life Ins Co*, 402 F3d 1267, 1281 (CA 11, 2005) ("Complete preemption is . . . narrower than 'defensive' ERISA preemption . . . ."); *Warner v Ford Motor Co*, 46 F3d 531, 535 (CA 6, 1995) (removal and preemption are distinct concepts; the fact that a plaintiff's claims are defensively preempted does not establish that they are removable to federal court; and a preemption defense decided in state court is subject to review on certiorari in the United States Supreme Court).  Therefore, the federal district court's order remanding the case to state court on the basis of the inapplicability of the complete preemption doctrine does not preclude the determination in state court that defensive preemption under ERISA applies.

The City contends that the trial court's preemption ruling could leave the City without a forum to determine any rights it may have under Michigan law.  The City suggests that if it files

---

[3] The City suggests the inapplicability of the MPPAA provision by noting that the City has not yet been assessed withdrawal liability given that it has continued to make contributions to the Fund under protest during the pendency of this case.  But this entirely misses the point – the City's complaint *itself* raises the issue of withdrawal liability by requesting declaratory and injunctive relief to prevent the Fund from attempting to assess or collect withdrawal liability.

suit in federal court, it may have to "re-plead its claims in the context of ERISA" in order to invoke federal subject-matter jurisdiction and thereby concede that state law permits the City to become a party to an ERISA plan. The City says that its other option is to withdraw from the Fund and then assert its state law claims in defense of a withdrawal liability action filed against the City in federal court, but the City expresses dissatisfaction with this option because it would require the City to breach the alleged contract and expose itself to an unwanted withdrawal liability claim. The City says that it does not want to be forced "into a [f]ederal court defensive posture[.]"

The City's argument on this point is unconvincing. The fact that the City is dissatisfied with the remaining procedural avenues available to it is not pertinent to whether the City's claims are expressly preempted by ERISA. "The deliberate care with which the [withdrawal liability] enforcement scheme was drafted and the balancing of policies embodied in its choice of remedies indicates strongly that the enforcement remedies were intended to be exclusive." *Central States*, 836 F Supp at 676 (quotation marks and citation omitted). The remedies provided by ERISA for collecting withdrawal liability were intended to supplant any other remedies, thus barring the invocation of state law remedies not provided by ERISA. *Id*. at 677. "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans." *Aetna Health Inc v Davila*, 542 US 200, 208; 124 S Ct 2488; 159 L Ed 2d 312 (2004). The expansive preemption provisions of ERISA were "intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Id*. (quotation marks and citation omitted). Hence, the fact that the City's remedies related to its contributions to the Fund and to withdrawal liability matters are limited to those provided by ERISA is consistent with the purpose of ERISA. Moreover, whether a remedy is available under ERISA has no bearing on the ERISA preemption analysis. See *Cannon v Group Health Serv of Oklahoma, Inc*, 77 F3d 1270, 1274 (CA 10, 1996); *Cromwell*, 944 F2d at 1276.

In any event, remedies are available to the City under ERISA. Again, 29 USC 1451(a)(1) allows an employer to bring an action for legal or equitable relief. The City suggests that, in order to invoke federal subject-matter jurisdiction in such a lawsuit, the City would have to effectively concede that state law permits it to become a party to an ERISA plan. Even if the City is correct on this point, the fact remains that the City's preference against making such a concession fails to establish that its claims are not preempted under ERISA. Further, the City acknowledges that, if it withdraws from the Fund, it could raise state law arguments as a defense in any action against it to collect withdrawal liability. See 29 USC 1399(b)(2)(A)(*i*) (allowing an employer to ask a "plan sponsor to review any specific matter relating to the determination of the employer's [withdrawal] liability and the schedule of payments[]"); 29 USC 1401(a)(1) (providing for arbitration of withdrawal liability disputes between an employer and a plan sponsor). The City's preference to avoid a "[f]ederal court defensive posture" is irrelevant to the preemption analysis.

Next, the City argues that the trial court's preemption analysis was premised on factual assumptions that lacked a basis in the record and that summary disposition was premature because discovery remained open. The City notes the trial court's statement that, "if granted, the [City's] requested declaratory relief will effect [sic] the Fund's ability to provide promised pension benefits, and will affect the purposes and objectives of the MPPA[A] and ERISA . . . ." The City says there is no factual basis in the record for this assertion. The City seeks further

discovery regarding whether there would be any effect on pension benefits arising from a determination that the Michigan Constitution barred the City from contributing to the Fund.

We disagree with the City's argument on this point. Federal preemption of state law presents a legal issue. *Packowski*, 289 Mich App at 138. Also, "[a] motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of the complaint on the basis of the pleadings alone . . . ." *Zaher*, 300 Mich App at 139. Summary disposition under MCR 2.116(C)(8) is warranted where the plaintiff's claims are preempted under ERISA. See *Brinker*, 152 Mich App at 733. Obviously, then, further discovery would not have altered the determination to grant summary disposition under MCR 2.116(C)(8). Although summary disposition was also granted under MCR 2.116(C)(4), and such a motion requires a court to consider evidence submitted in addition to the pleadings, *CC Mid West, Inc*, 470 Mich at 878, no additional evidence is needed here to resolve the federal preemption issue. The trial court's statement that the City's requested declaratory relief would affect the Fund's ability to provide pension benefits was not central to its preemption analysis or necessary to resolve the preemption issue. Preemption under 29 USC 1144(a) turns on whether the state law "relate[s] to" an employee benefit plan. There is no requirement to prove the exact effect of the requested relief before finding that the claims are preempted. In any event, given that the City asks for the return of some of its contributions and seeks to avoid $3.2 million in withdrawal liability, it cannot be genuinely disputed that the funding of the pension plan would be affected by the City's requested relief. Accordingly, although discovery remained open, summary disposition was appropriate because further discovery did not stand a fair chance of altering the conclusion that the City's claims were preempted by ERISA. See *Village of Dimondale v Grable*, 240 Mich App 553, 566; 618 NW2d 23 (2000) (although summary disposition is generally premature if discovery is ongoing, "summary disposition may be proper before discovery is complete where further discovery does not stand a fair chance of uncovering factual support for the position of the party opposing the motion.") (quotation marks and citations omitted).

The City next contends that the trial court's finding of preemption violates the Tenth Amendment of the United States Constitution and federal Supremacy Clause jurisprudence. The City says that ERISA cannot preempt state law concerning the authority of a municipal corporation to enter into a contract or to lend its credit. The City argues that ERISA does not expressly prohibit a state from making it unlawful for a municipality to lend its credit or delegate its taxing authority. The City asserts that, in enacting ERISA, Congress did not intend to repeal provisions of the Michigan Constitution limiting a municipality's taxing and spending authority. The City argues against the applicability of conflict or field preemption.

We note that this aspect of the City's argument is unpreserved because it was first raised in a motion for reconsideration of the trial court's order granting the Fund's motion for summary disposition. See *Vushaj v Farm Bureau Gen Ins Co of Mich*, 284 Mich App 513, 519; 773 NW2d 758 (2009). "This Court reviews unpreserved issues for plain error affecting substantial rights." *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013).

The City's argument on this matter is unavailing. The City fails to cite any pertinent case law in support of this argument or to adequately explain how the trial court's ruling violated the Tenth Amendment or the Supremacy Clause. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims. And,

-8-

where a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citations omitted). In any event, the City's argument lacks merit. "Preemption of state law by ERISA is a valid exercise of Congress'[s] commerce power and does not violate the [T]enth [A]mendment." *Hewlett-Packard Co v Barnes*, 571 F2d 502, 504 (CA 9, 1978). As discussed, the trial court properly concluded that the City's claims are *expressly* preempted by ERISA; the City's discussion of conflict and field preemption is thus inapt. Contrary to the City's characterization, the trial court's ruling did not purport to invalidate provisions of the Michigan Constitution. Rather, the court correctly concluded that plaintiff's *claims* premised on those provisions are preempted. Because the City's claims are preempted by ERISA, the trial court properly determined that it lacked subject-matter jurisdiction to hear the City's claims. See *Packowski*, 289 Mich App at 139-140. "When a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Todd v Dep't of Corrections*, 232 Mich App 623, 628; 591 NW2d 375 (1998). Accordingly, the trial court did not err when it dismissed the City's complaint for lack of subject-matter jurisdiction.

The City also argues that the Michigan Constitution prohibits the City from binding itself to contribute to the Fund. But for the reasons discussed, the City's claims are preempted by ERISA, meaning that Michigan courts lack subject-matter jurisdiction to hear the City's claims. See *Packowski*, 289 Mich App at 139-140. Again, "[w]hen a court is without jurisdiction of the subject matter, any action with respect to such a cause, other than to dismiss it, is absolutely void." *Todd*, 232 Mich App at 628. Hence, we do not reach the City's argument concerning the substance of the City's claims under the Michigan Constitution. It is also notable that the City's motion for summary disposition did not address the substance of the City's claims, instead seeking summary disposition solely on the basis of federal preemption.

Affirmed.

/s/ Deborah A. Servitto
/s/ Mark J. Cavanagh
/s/ Karen M. Fort Hood